(May 17, 1966)

■ In the Matter of CLARA DUNCAN, Respondent, v. ROBERT DUNCAN, Appellant.

APPEAL from a determination of the Family Court, City-wide Family Offenses Term, entered March 24, 1966, finding that appellant had violated an order of protection and imposing a sentence of 90 days.

*Per Curiam.* Order of the Family Court entered March 24, 1966, finding appellant guilty of violating an order of protection, and sentencing him to a

term of 90 days in the Workhouse, reversed on the law, the facts, and in the exercise of discretion, and the matter is remanded to the Family Court for a new hearing, without costs or disbursements to either party.

The original order of protection which was made by the Family Court on August 25, 1965, directed that the appellant "shall not strike, threaten, annoy or molest the petitioner [wife of the appellant]." On September 23, 1965, the following was added to that order: "This order is modified as follows: Respondent shall live away from the Petitioner's apartment." We are not in agreement with the appellant's contention that the modification superseded the first order of protection. Rather, we construe it to be an addition to the first and, therefore, consider the order of protection of August 25, 1965 to be in full effect as added to by the September 23 order.

In this proceeding the petitioner asserts that the appellant violated the protective order in that on February 11, 1966 at 11:30 P.M., at Nostrand and Flushing Avenues, Brooklyn, her husband, the appellant, fired four pistol shots in her direction, and that on February 28, he came to her home and attempted to strike her with a telephone receiver.

With relation to the incident of February 28, the petitioner, at the hearing, admitted that nothing happened on that date involving a telephone receiver. We, therefore, need not consider such alleged violation, except as it bears on the credibility of the petitioner.

With respect to the shooting, the petitioner testified that on February 11, 1966 as she was about to enter an automobile, her husband engaged her in conversation and, thereafter, shot at her. Although the appellant asserted an alibi and brought a witness to testify that he was elsewhere at the time of the alleged shooting, the court felt that the evidence supported the petitioner and, consequently, found the defendant guilty of violating the protective order. It should be noted that the court not only found the defendant guilty to the charge concerning the shooting, but also found the defendant guilty of the charge with respect to the telephone receiver, which charge was completely retracted by the petitioner. Obviously, the court was in error in this latter respect.

In sentencing the defendant to 90 days in the Workhouse, the court said as follows: "THE COURT: I have a very definite reaction to these matters of guns. There is too much involved in these matters and frankly it is my normal position to send somebody to jail when shots are fired." It is quite evident that the court imposed the jail sentence because of its finding that the defendant did shoot at the petitioner.

In view of the petitioner's retraction of her charge with respect to an incident occurring on February 28, the issue turns on the strength of petitioner's testimony that shots were fired at her on February 11. The story of the petitioner is strange, indeed. She testified that immediately after the shooting she reported the occurrence to a police officer who advised her to "get a gun and shoot back". Incidentally, her only witness, who was with her all of the time, does not testify as to the petitioner having talked with a policeman. The story of the conversation with the policeman seems incredible. The petitioner further testified that she then reported the matter to the 90th Police Precinct and that a detective was sent out to investigate. It seems strange that if, indeed, there was a shooting, no arrest was made on an assault or a gun charge. A shooting, in the presence of as many witnesses as the petitioner says were present, cannot be overlooked, particularly where the petitioner claims that one of the bullets shattered a store window. In addition, no explanation is given as to why the petitioner delayed 18 days before filing a complaint against her husband for violating the protective order. Finally, we cannot overlook her retraction of the February 28 charge which tends to discredit her entire story.

Since petitioner states that she reported the shooting to the 90th Police Precinct, the records of the precinct could have been determinative of who is telling the truth. Such records should have been subpoenaed.

We conclude, therefore, that the record, as it now stands, is insufficient to establish petitioner's allegations and, accordingly, the order of commitment is reversed and the matter remanded for a new trial.

Botein, P. J., Breitel, Rabin and Eager, JJ., concur.

Order, entered on March 24, 1966, unanimously reversed, on the law, on the facts and in the exercise of discretion, without costs or disbursements to either party, and the matter is remanded to the Family Court for a new hearing.